Mr. Forbes you may proceed. Thank you, Your Honor. Basically our argument is three-pronged. Your Honor, I only see two judges. Am I missing a judge? Judge Easterbrook is participating via audio. Oh, okay. We're all here. All right, great. Our listing argument is two-fold, but I will concede that probably the argument that the newer listing applies is accurate. Although the Supreme Court, I don't believe, has definitively ruled on it, the Combs case out of the Sixth Circuit, which was discussed in the district court oral argument, rules against the applicability of the old listing 112.05. Although obviously we think Judge Clay's dissent in that case is what should govern. So I'm going to move on from that issue unless there are questions on that issue. All right, thank you. The new listing, I believe, the new mental health listings in general, but especially as applicable to child cases, are strange because they basically repeat the domain analysis. So in the new listing, if you qualify under the IQ, you still have to have two marked gradations in the second part. And those areas are similar to, I think, four of the domains, at least three of the domains. So the IQ, in one sense, is irrelevant to the new listing because if you get the marked gradations in the functional areas, you're going to get the marked gradations in the domain analysis. So essentially the listing is made superfluous because of the interaction of the domain analysis in the listing. You meet the listing because you've got the marked gradations, but then you also meet the domain analysis. So in one sense, they did not replace the old listing with anything substantive because the old listing or the new listing essentially repeats the domain analysis. I don't know how that particular quirk works its way legally, but it's something to consider. So I'm going to go right to the domain analysis because I think that's probably our strongest argument. And if we win the domain analysis, we would get the listing anyways. The ALJ did find the child marked in the acquisition and information domain. And I think there's arguments, maybe very strong arguments, that this case would have met the old listing. But that gradation should have been extreme. And the adjective extreme was used in the consultative examination of Dr. Nordstrom in relation to a few different things, and also in the psychological evaluation, the school psychologist evaluation, which at least in one point in the record follows Dr. Nordstrom really close. In fact, OCR, the word extreme, it pops up quite a bit in the substantive psychological reports. And I think that says something. The other main point, which I don't believe the ALJ appreciated, is that the consultative examiner, Dr. Nordstrom, indicated that the interaction was equivalent to the cognitive impairment. In other words, the child was interacting as someone would, as someone who had the cognitive impairment that the child has. Why is that equivalency important? Well, the ALJ found the acquisition and information domain, found that gradation marked, but only found the interaction domain, did not find the interaction domain to be marked. Yet, one of the most qualified opiners in this record have pretty much indicated, without any objection from any equivalent opiner, that the social interaction would be at the mark through that analysis, that the acquisition and info is marked. If the person is interacting as someone would at that cognitive level, then that should be marked also, and then in the domain analysis, disability should be found, because we only need two marked gradations, or two marked domains. The six domains, you need two marked for disability. So that's not an exhaustive list of our arguments, but it covers the main points, and I'll reserve the rest of my time for rebuttal, Your Honor. Thank you. That's fine. Thank you. Mr. Montenegro. Good morning, Your Honors. My name is Leo Montenegro, appearing for the Commissioner of Social Security. The listing at issue here is 112.05, and that describes an intellectual disorder. These are the listings for children, so slightly different from the ones for adults, but this one really isn't that different. I should say, speak to my opposing counsel's discussion of the old listing. There was a previous listing. The listings are regularly revised. If you were to look at the listing of impairments in the regulations at 20 CFR Part 404, you'll see at the very beginning of the listings, there is a schedule for describing when they're going to be revised or replaced. My point here is that the old listing is obsolete. It was replaced. It was expected to be replaced. They're replaced when there are advances in medical science, the understanding of these impairments. So the old listing is obsolete. It was not intended to be applied as soon as the new listing was published in 2017, and there's no reason to go back in time and use a listing that has been replaced by something more updated. Also, these are the Commissioner's regulations entitled to Chevron deference. This is what the Commissioner intended as published in the Federal Register. That is, that the listing in existence at the time of the adjudication, DLJ's decision, was the one that should be applied, and that's the current listing. Also, my opposing counsel said that IQ is essentially irrelevant to the listings. That's not true. The IQ, as described in listing 112.05, is a part of the two different ways that you can be disabled under that listing. It's still a requirement. It's just, I think, not the primary issue here. And he also said that listing 112.05, the analysis is kind of repetitive. I'll have to agree on that. It is, but that is the way the regulation is written, and really, I think that just shows the focus on, essentially, the child's adaptive functioning. So they're asking the same questions in slightly different ways, and the ALJ's analysis here reflects that. The ALJ marched through an analysis of the evidence very thoroughly, and I want to avoid reading that to you. I'll commend you to the ALJ's decision on that point. As to 112.05 in particular, I should say there's conflicting evidence here. There's often conflicting evidence in these social security disability cases, especially in the ones that reach this level of federal court review. But the ALJ did address the conflicting evidence here, and his analysis of the evidence points to substantial evidence supporting his findings. Could it have gone the other way? I suppose so. I don't really know. But our position is that substantial evidence did support the ALJ's findings. As to 112.05, the claimant's child could have been found disabled in two ways. That is, there are two separate paths, 112.05A, which I don't think is being argued here. But essentially, part of that listing requires that the child be so affected that they can't undergo standardized intellectual testing. Well, that's not really relevant here, or not applicable here, because there was standardized intellectual testing by Consultative Examiner Dr. Nordstrom. So the child could not have been disabled under 112.05A directly by its terms. As to 112.05B, that requires the child to have an extreme limitation or two marked limitations in various categories. The ALJ's discussion covers that, and I'll point out that the state agency psychologists supported those findings. The ALJ found that the child had a marked limitation in understanding, remembering, or applying information, mild limitation in interacting with others, moderate limitation in concentration, persistence, and pace, and a moderate limitation in adapting and managing oneself. This is at page 15 of the ALJ's decision. Once you proceed past actually having to satisfy the direct criteria of the listing, another way that the child could have been found disabled would have been if the child functionally equaled the listing, and that's looking at the listing criteria in a more expansive way. That's also a highly technical analysis, and as I and opposing counsel said, it is kind of redundant, but that is the regulation as written that focuses on the claimant's, the child's functioning. So for functional equivalence, our position is that the claimant failed to show an extreme limitation in one or two marked limitations in two of the criteria there. Those criteria overlap, that's the redundancy, they overlap a lot with the criteria I mentioned earlier, which the ALJ I believe refers to as the Paragraph B findings. And since the Paragraph B findings were supported by the opinions of the state agency sources, likewise, the functional equivalence findings in ALJ's decision were supported by the state agency sources. But I should say the state agency sources weren't the only supporting evidence. The ALJ also discussed the treatment notes of Nurse Holcomb and the consultative examination of Dr. Nordstrom, as well as the evidence from the claimant's teachers. And he discusses that thoroughly, and that adds up to substantial evidence supporting the ALJ's findings. I should say that it's instructive to look at Dr. Nordstrom's opinion, since my opposing counsel is focused on that. It does contain, I guess, statements that are both good and bad for the disability claim. But Dr. Nordstrom said that the child presented with good attention and concentration after having taken medication. That's at page 512. The child was cooperative, gave a good effort, was able to attend and concentrate quite well, was able to comprehend and respond to all queries, and to understand all instructions. Now, while Dr. Nordstrom measured an IQ of 66, he added that the child appeared able to perform age-appropriate activities, showing that he's not that far behind in his development. He acknowledged that there were some problems with social-emotional skills, but repeated again that the child seemed to be able to complete tasks when taking medication. Now, Nurse Holcomb, the primary treating source, it appears, noted that the child was taking medications and didn't really point out any problems. They're recounting what the claimant, the child's father, said, that there was no issue with school performance, stable mood. This is at page 521, and that he had normal memory. Ms. Holcomb's notes just didn't seem to describe someone who was so developmentally disabled, so far behind in their development, so intellectually disabled that they were disabled under the listing. As to the claimant's argument about cherry-picking and the logical bridge between ALJ's discussion and findings, as I described in my brief, I take these as to be objections to specific evidence, objections to the ALJ's resolution of Nurse Holcomb's opinions, notes, and Dr. Nordstrom's opinions, and various test results. I addressed those in my brief, but essentially, it was the ALJ's province to resolve conflicts in the evidence. The ALJ pointed to evidence that supported his findings, and since substantial evidence supported the ALJ's findings, his decision should be affirmed. If there are no questions, Your Honor, I'll end. Thank you. Thank you very much. Mr. Forbes. Well, my statement about the irrelevance of the IQ in the new listing was mostly hyperbole in the sense that, yeah, it's in there, but if you meet the second prong, you're also going to meet the domain analysis anyways. It's almost like they didn't replace the old listing with anything because they still kept the domain analysis. There are three, I think three, at least three scores below 65 in a subarea that has to do with verbal. Those are seriously low IQ scores. Our arguments about the domain analysis demonstrate that there are other areas that were marked. One way of looking at this ALJ decision is to look at the great lengths that he went or him or her went through in order to deny disability. Almost always in these kind of cases, we are dealing with IQ scores and the parent's testimony. There's not a lot more evidentiary-wise that a claimant can do. And then I'll reemphasize that Dr. Nordstrom and the school psychologists, their examiners, they're the ones that provide the basis that show that in the domains, using the domains, claimant is disabled. And they are the ones that when you read their specific comments about specific domain areas, they use the words extreme. And then I might point out, finally, that the old listing would have been met. The IQ scores were qualifying and the judge found enuresis to be a severe impairment. Now, later on, he talked about it not being much, but he found it as a step two severe impairment. I think he should be a stop from denying that it's a severe impairment later. And that impairment, when plugged into the old listing, shows that it meets the old listing. Why is that important? Well, because they haven't really replaced the old listing. They just repeated the domain analysis. And I'm not really sure how that comes together, but it just doesn't seem to be logical. So this is a very young child that has struggled and doing the best it can, but all the objective evidence indicates that he's disabled. Thank you very much. Thank you very much. And our thanks to both counsel. The case is taken under advisement.